UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-8030-CAS (VBKx) | Date | October 19, 2012 |
|---|---|---|---|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants |
| Not Present | | Not Present |

**Proceedings:**    **(In Chambers:) PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** (filed September 18, 2012)

## I.    INTRODUCTION & BACKGROUND

On September 18, 2012, plaintiff P. Stephen Lamont, proceeding pro se, filed suit against defendants Time Warner, Inc. ("Time Warner") and Warner Brothers Entertainment, Inc. ("Warner Brothers"), erroneously named as Warner Bros. Entertainment Group.  Dkt. No. 1.  Plaintiff principally alleges that defendants appropriated proprietary video streaming technology, in violation of multiple non-disclosure and confidentiality agreements that defendants entered into with non-party Iviewit Holdings, Inc ("Iviewit").  Id.

Plaintiff alleges as follows.  Plaintiff is the Chief Executive Officer and "significant shareholder" of Iviewit Holdings, Inc., a Delaware corporation.  Compl. ¶ 5. Plaintiff himself is a resident of New York state.  Id. ¶ 3.  Late in 1998, three inventors—none of whom were plaintiff—"designed" novel technologies for video scaling and image overlay, which are useful for creating and streaming digital video.  Id. ¶ 9, 13, 16.

Two years later, Iviewit entered into a series of confidentiality / non-disclosure agreements ("NDAs") with Warner Brothers regarding this technology.  The first agreement was entered into on August 14, 2000, signed by David Colter on behalf of Warner Brothers, and contains a prohibition against the use of Iviewit's proprietary information without Iviewit's written consent.  Id. ¶ 10 ("Colter NDA"), Ex. A. Thereafter, Iviewit shared the details of its technologies with Warner Brothers, and Warner Brothers began to utilize these technologies in its multimedia lab in Glendale,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | | Date | October 19, 2012 |
|---|---|---|---|---|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | | |

California.  Id. ¶ 11.  However, defendant failed to pay the royalties allegedly owed for the use of U.S. Patent Nos. 09/630,939, 09/522,721, 09/587,734, 09/587,026, and 09/587,730, pursuant to a royalty schedule that plaintiff has set forth in the complaint.  Id. ¶ 14.

On February 27 and August 14, 2001, Iviewit entered into two additional NDAs with Warner Brothers regarding the use of Ivewit's proprietary technology.  Id. ¶¶ 17–19. On January 14, 2002, Colter sent an email to other Warner Brothers employees (which was then forwarded to an Iviewit employee), where he stated his belief that Warner Brothers used some of Iviewit's techniques for encoding video for internet streaming, although he was unsure to what extent the techniques either came from or were available within the public domain.  Id. Ex. D.  Thereafter, Warner Brothers and Time Warner have continued to use Iviewit's technologies in "direct violation" of the NDAs and "strategic alliance contracts."  Id. ¶ 22.[1]

On February 27, 2002, plaintiff, on behalf of Iviewit, sent an email to an employee of Warner Brothers, John Calkins, demanding that Warner Brothers cease its purportedly unauthorized use of Iviewit's technology without paying the proper royalties.  Id. Ex. E. However, Warner Brothers failed to comply with plaintiff's demands for royalties, and Iviewit failed to press its claim further, due to a "power struggle" between plaintiff and the Iviewit founder.  Id. ¶¶ 32–33.

On April 1, 2011, the shareholders of Iviewit resolved that all NDAs and other agreements entered into by Iviewit would be assigned to the capital shareholders of Iviewit Holdings, Inc., including plaintiff.  Id. ¶ 23.  An assignment and assumption agreement to this effect, pertaining to all the contracts at issue in this litigation, was executed on April 29, 2011.  Id. ¶ 24.  These assignments were reaffirmed on August 10, 2012, by the Iviewit shareholders.  Id. ¶ 25.

On August 10 and 13, 2012, plaintiff sent further cease and desist demands by email to the General Counsel of Time Warner, advising him of the purported violations the NDAs.  Id. ¶ 34–35; Ex. F.  Defendant failed to respond within twenty-one days, and

---

[1] Plaintiff does not state in his complaint what the terms of the purported "strategic alliance contracts" are, nor attach any such contract to his complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | | Date | October 19, 2012 |
|---|---|---|---|---|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | | |

therefore plaintiff initiated the instant lawsuit.  Plaintiff brings one claim of relief, for breach of contract.  He seeks more than eleven years of unpaid royalties resulting from defendants' allegedly unauthorized use of Iviewit's technologies.  Id. ¶¶ 38–40.

On September 18, 2012, plaintiff filed this motion for a preliminary injunction. Dkt. No. 3.  Plaintiff requests that this Court issue an order enjoining defendants from continuing to use plaintiff's video and imaging technologies without permission.  Id. at 3. Defendant filed its opposition and a request for judicial notice on October 1, 2012.  Dkt. No. 6–8.  Plaintiff filed a reply and his own request for judicial notice on October 12, 2012.[2]  Dkt. Nos. 18–19.  Defendant filed an opposition to plaintiff's request for judicial notice on the same date.  Dkt. No. 14.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Am. Trucking Ass'n, Inc. v.

---

[2] Federal Rule of Evidence 201 authorizes a court to take judicial notice of "matters of public record,"  Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986), or any other "adjudicative" facts, which are "facts concerning the immediate parties."  See United States v. Gould, 536 F.2d 216, 219 (8th Cir. 1976); In re Homestore.com, Inc. Sec. Lit., 347 F. Supp. 2d 814, 816-17 (C.D. Cal. 2004).  Defendant submits: (1) the minute order from Lamont v. Proskauer Rose, LLP, et al., CV No. 11-0949 (D.D.C. Oct. 8, 2012); (2) an extract from the Register of European Patents; (3) International Patent Application No. WO 01/09836 A1; and (4) Time Warner, Inc.'s Annual Report (Form 10-K).  The Court GRANTS defendants' request for judicial notice of these documents. These exhibits are the proper subject of judicial notice because they are all publicly available court and government records, the accuracy of which has not been questioned here.  In addition, the Court DENIES plaintiff's request for judicial notice set forth in his reply—none of these non-public, uncertified or unverified documents are the type "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                   $O$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | Date | October 19, 2012 |
|----------|------------------------|------|------------------|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | |

<u>City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009); <u>see also</u> <u>Cal Pharms. Ass'n v. Maxwell-Jolly</u>, 563 F.3d 847, 849 (9th Cir. 2009).  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the <u>Winter</u> test are also met."  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is one on which the movant "has a fair chance of success on the merits."  <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1421 (9th Cir. 1984).  Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical."  <u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009).

## III.   ANALYSIS

Plaintiff contends that an exercise of this Court's injunctive powers is warranted in this case for the following reasons.  First, he argues that he has a substantial likelihood of success on the merits of his breach of contract claim, because there are at least "serious questions" as to whether defendants have unlawfully appropriated his video technologies.  Mot. at 9–13.  Second, plaintiff contends that the alleged harm here is irreparable because plaintiff is suffering "incalculable and unrecoverable loss of market share," loss of royalties, and loss of goodwill because of defendants' alleged conduct.  <u>Id.</u> at 14–19.  Moreover, plaintiff argues that there is a causal nexus between the irreparable harm he alleges and defendants' alleged misappropriation.  <u>Id.</u> at 19–20.  Third, plaintiff contends that the balance of harms weighs in favor of granting injunctive relief, because of the high likelihood of plaintiff prevailing on the merits of his claims and the vastly greater resources of defendants.  Fourth, plaintiff argues that the grant of an injunction would serve the public interest, because plaintiff the public has a legitimate interest in the protection of intellectual property rights.  <u>Id.</u> at 23–25.

### A.      Likelihood of Success on the Merits

The Court finds that plaintiff has not met his burden of demonstrating that he is entitled to a preliminary injunction against defendants.

First, because the Court likely lacks subject matter jurisdiction in this action, plaintiff would have no chance of succeeding on the merits.  Plaintiff is a citizen of New York, like Time Warner, for that is where Time Warner's officers direct and control the corporation's activities.  <u>See</u> Def.'s Request for Judicial Notice ("RJN"), Ex. D (Annual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | Date | October 19, 2012 |
|----------|------------------------|------|------------------|

| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. |
|-------|--------------------------------------------------|

Report Form 10-K for Time Warner, Inc.); <u>Hertz Corp. v. Friend</u>, 130 S. Ct. 1181, 1192 (2010) (holding that the "nerve center" test determines a corporation's citizenship). As such, the Court likely lacks jurisdiction over this action on the basis of complete diversity of citizenship. <u>See</u> 28 U.S.C. § 1332.[3]

     Second, much if not all of the relief sought by plaintiff is likely barred by the statute of limitations. Plaintiff (on behalf of Iviewit) first threatened to bring these very claims against Warner Brothers in February 2002, if defendant failed to comply with his demands. <u>See</u> Compl. Ex. E, Letter from Plaintiff to Warner Brothers.[4] Actions for breach of a written contract are subject to a four-year statute of limitations under California law. Cal. Civ. P. Code § 337(1). This limitations period begins to run "upon the occurrence of the last element essential to the cause of action." <u>Neel v. Magana, Olney, Levy, Cathcart & Gelfand</u>, 6 Cal.3d 176, 187 (Cal. 1971). According to plaintiff, damages from defendants' alleged breach began accruing over eleven years ago; that defendant is allegedly continuing to breach the contract today is of no moment. Only when there is a continuing wrong with "periodic new injury to the plaintiff" may a "continuing accrual" theory apply, such that more than one breach of the contract may be at issue. <u>See</u> <u>Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1388 (2004); <u>see also id.</u> at 1389 ("context of continuing—that is, periodic— accrual for periodic breach is to be distinguished from that of a single breach or other wrong which has continuing impact. . . "). The only contracts that plaintiff has placed at issue here are non-disclosure agreements, and therefore any breach of contract claim accrued from the time defendants allegedly misappropriated Iviewit's technologies. As

---

   [3] Moreover, this Court lacks jurisdiction on the basis of a federal question, because plaintiff only asserts a state law breach of contract claim.

   [4] Plaintiff's assertion that he had "no authority" to bring this action until 2010, Reply at 24, is irrelevant—if plaintiff's breach of contract claim belonged to Iviewit until recently and Iviewit failed to bring such a claim, the assignment of the claim to plaintiff does not in any way reinvigorate what is otherwise a time-barred claim. Moreover, plaintiff may *still* lack the authority to bring this pro se suit for breach of contract based on NDAs that Iviewit entered into, an issue the Court declines to address for purposes of the present motion. <u>See</u> Def.'s Opp'n at 7–8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | Date | October 19, 2012 |
|---|---|---|---|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | |

such, plaintiff's claim is likely barred by the statute of limitations, frustrating any likelihood of success on the merits.[5]

### B.    Irreparable Harm

Plaintiff also has not demonstrated that he is likely to suffer irreparable harm absent injunctive relief in this case.  First, none of the injuries that plaintiff alleges are immediate.  Most relevant for present purposes is plaintiff's greater than ten year delay in bringing this lawsuit and this motion.  Under these circumstances, the doctrine of laches bars plaintiff's request for equitable injunctive relief.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) ("[l]aches bar[s] untimely equitable causes of action" where a plaintiff's delay in bringing suit is (1) unreasonable and (2) would prejudice the defendant); Oakland Tribune, Inc. v. Chronicle Pub., Co., 762 F.2d 1374, 1377 (9th Cir. 1985) (a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm").  Plaintiff fails to demonstrate any immediacy on behalf of himself or Iviewit, as he alleges that Iviewit failed to press its claim for breach of contract at the time when the purported breach arose.  Compl. ¶¶ 32–33.  As such, plaintiff's long delay in filing suit is unreasonable.  See Jarrow Formulas, 304 F.3d at 838.  In addition, defendants are clearly prejudiced by plaintiff's delay in bringing this action, as defendants had no reason to believe plaintiff's allegations

---

[5]  The Court notes that defendants' assertion that claim preclusion applies is incorrect.  A court declining to exercise supplemental jurisdiction over a plaintiff's state law claims has no preclusive effect; to find otherwise would defeat the purpose of the discretionary exercise of supplemental jurisdiction set forth in 28 U.S.C. § 1367(c), which allows a court to decline to exercise jurisdiction over any state law claims once a plaintiff's federal claims have been dismissed from the action.  In a previous action very similar to this one, Judge Scheindlin of the Southern District of New York declined to exercise supplemental jurisdiction over plaintiff's state law claims.  See Bernstein v. State of New York, 591 F. Supp. 2d 448, 469 (S.D.N.Y. 2008).  In 2012, Judge Rothstein of the District Court for the District of Columbia found plaintiff's federal claim in a similar action barred by res judicata, but also declined to exercise supplemental jurisdiction over plaintiff's state law claims.  See Lamont v. Proskauer Rose, LLP, et al., CV No. 11-0949 (D.D.C. Oct. 8, 2012), Def.'s RJN Ex. A.  Accordingly, plaintiff's state law claim here has never been adjudicated on the merits and no res judicata bar applies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8030-CAS (VBKx) | Date | October 19, 2012 |
|---|---|---|---|
| Title | P. STEPHEN LAMONT V. TIME WARNER, INC., ET AL. | | |

from 2001 would resurface a decade later.  Id. at 839.  Accordingly, the doctrine of laches bars plaintiff's request for injunctive relief.

Besides not being urgent, most if not all of plaintiff's claimed harm is not irreparable either, because "monetary injury is not normally considered irreparable." Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).  If he succeeds on his breach of contract claim, plaintiff's claimed injuries will be compensable with money damages, as plaintiff himself has set forth the royalty scheme he wishes to impose on defendants for their purported violations.  Thus, plaintiff has not met his burden of demonstrating that he will suffer irreparable harm.

**IV.    CONCLUSION**

Because the Court finds that plaintiff has not demonstrated that he is likely to succeed on the merits of his claim, nor that he is likely to suffer irreparable injury absent injunctive relief, the Court declines to consider the other two factors of the Winter test. In accordance with the foregoing, the Court DENIES plaintiff's request for a preliminary injunction.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |